KEVIN E. HORACE ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF SALEM ET AL.
(AC 24665)

Lavery, C. J., and Bishop and DiPentima, Js.

Argued June 8—officially released September 21, 2004

*John R. FitzGerald*, for the appellants (plaintiffs).

*John W. Butts*, for the appellee (named defendant).

*Opinion*

LAVERY, C. J. The plaintiffs, Kevin E. Horace and Mindy S. Horace,[1] appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant, the zoning board of appeals of the town of Salem (board), granting the application by the defendant Todd Nechamen for a variance.[2] On appeal, the plaintiffs claim that the court improperly concluded that (1) a legally cognizable hardship existed that permitted the board to grant a variance, (2) there was substantial evidence before the board of a legally cognizable hardship and (3) the board properly permitted Nechamen to expand his business and such expansion was in accordance with the town's comprehensive plan. We agree with the plaintiffs and, accordingly, reverse the judgment of the trial court.[3]

[1] The court found that the plaintiffs owned abutting property and therefore were aggrieved for purposes of standing. See General Statutes § 8-8.

[2] The plaintiffs, in their complaint, named the board, Nechamen, Rebecca Nortz, the chairperson of the board, and Patricia J. Crisanti, the town clerk of Salem, as defendants. Only the board and Nechamen are parties to this appeal. Nechamen did not file a brief or appear at oral argument.

[3] The first two issues raised by the plaintiffs require us to determine whether, in this case, a legally cognizable hardship existed that would allow the board to grant a variance. Those issues are dispositive of the appeal. It is well established that "[p]roof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance." (Internal quotation marks omitted.) *Dupont* v. *Zoning Board of Appeals*, 80 Conn. App. 327, 330, 834 A.2d 801 (2003). Because we conclude that no such difficulty or hardship existed and that it was therefore improper for the board to grant the variance, we need not reach the plaintiffs' third issue.

The following facts and procedural history are relevant to our resolution of the plaintiffs' appeal. Nechamen, the owner of property in Salem that was zoned for residential use, submitted an application to the board seeking a variance. The property housed an automobile repair shop and used car dealership that had been in existence prior to the enactment of the zoning regulations. It was, therefore, a preexisting, nonconforming commercial use. Nechamen requested permission to expand the building substantially by constructing an 1800 square foot garage addition and a 375 square foot handicapped accessible office.

The board unanimously granted the variance application on July 25, 2002. It stated in relevant part that its reason for granting the application was "to make the business less nonconforming and for the reason that the property has been in the same continuous ownership since prior to the establishment of the [zoning regulations], and literal enforcement of the [z]oning [r]egulations for this application will result in exceptional difficulty and . . . unusual hardship, and substantial injustice will be done and the public safety and welfare will not be secured."[4]

---

[4] We note that the board formally stated its reasons for its decision. "Where a zoning [commission] has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The [board's action] must be sustained if even one of the stated reasons is sufficient to support it. . . . [This principle] applies where the [commission] has rendered a formal, official, collective statement of the reasons for its action. . . . Thus, where a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement . . . [and] attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." (Citation omitted; internal quotation marks omitted.) *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 513, 636 A.2d 1342 (1994); see also *Kaufman* v. *Zoning Commission*, 232 Conn. 122, 142–43, 653 A.2d 798 (1995); R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (1999) § 33.8, pp. 175–76.

The plaintiffs subsequently appealed to the court from the board's decision. The court agreed with the board's determination and dismissed the plaintiffs' appeal. Additional facts will be set forth as necessary.

At the outset, we identify the standard of review and certain legal principles that guide our resolution of the issues before us. "Our standard of review when considering an appeal from the judgment of a court regarding the decision of a zoning board to grant or deny a variance is well established. We must determine whether the trial court correctly concluded that the board's act was not arbitrary, illegal or an abuse of discretion. . . . Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . We, in turn, review the action of the trial court. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) *Hoffer* v. *Zoning Board of Appeals*, 64 Conn. App. 39, 41, 779 A.2d 214 (2001); see also *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 205–206, 658 A.2d 559 (1995).

In the present case, Nechamen sought to obtain a variance to expand a building that housed a preexisting, nonconforming use, namely, a commercial use located in a residential zone.[5] A variance has been defined as

[5] "A nonconformity has been defined as a use or structure [that is] prohibited by the zoning regulations but is permitted because of its existence at the time that the regulations [were] adopted. . . . For a use to be considered nonconforming . . . that use must possess two characteristics. First, it must be *lawful* and second, it must be *in existence* at the time that the zoning regulation making the use nonconforming was enacted." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Zoning Board of Appeals*, 74 Conn. App. 622, 627–28, 814 A.2d 396, cert. denied, 263 Conn. 901, 819 A.2d 836 (2003); see also

the "authority granted to [an] owner to use his property in a manner forbidden by zoning regulations." (Internal quotation marks omitted.) *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271 (1996). Our Supreme Court has cautioned that "the power to grant variances from the strict application of zoning ordinances should be carefully and sparingly exercised. . . . The power to authorize a variance is only granted for relief in specific and exceptional instances." (Citations omitted; internal quotation marks omitted.) *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 270–71, 588 A.2d 1372 (1991); see also *Jaser* v. *Zoning Board of Appeals*, 43 Conn. App. 545, 548, 684 A.2d 735 (1996).

The board granted the variance application pursuant to § 16.1.2 of the Salem zoning regulations, which provides that the board shall have the power and duty "to determine and vary the application of [the zoning regulations] in harmony with their general purpose and intent, and with due consideration for conserving the public health, safety, convenience, welfare, and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel, but not effecting generally the district in which it is situated, a literal enforcement of these Regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured." That regulation essentially mirrors General Statutes § 8-6 (a).

"[Section] 8-6 (a) (3) authorizes a zoning board to grant a variance only when two conditions are met: (1) the variance must be shown not to affect substantially the comprehensive zoning plan; and (2) adherence to

*Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 735 n.5, 626 A.2d 705 (1993); R. Fuller, supra, § 52.1 et seq.

the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) *Kalimian* v. *Zoning Board of Appeals*, 65 Conn. App. 628, 631, 783 A.2d 506, cert. denied, 258 Conn. 936, 785 A.2d 231 (2001). With the foregoing legal principles in mind, we turn to the specifics of the plaintiffs' appeal.

I

The plaintiffs first claim that the court improperly concluded that a legally cognizable hardship existed that permitted the board to grant the variance. Specifically, they argue that the fact that the property had been in the same continuous ownership since prior to the establishment of the zoning regulations was an insufficient legal hardship and therefore the board improperly granted the variance. We agree.

The parties have not provided us with any case law that has held that continuous ownership is the type of recognized hardship that would warrant a variance. If we were to agree that continuous ownership constituted a hardship authorizing a variance, we would be expanding the number of parties entitled to a variance and undermine the general principle that "unless great caution is used and variances are granted only in proper cases, the whole fabric of town- and city-wide zoning will be worn through in spots and raveled at the edges until its purpose in protecting the property values and securing the orderly development of the community is completely thwarted." *Rogers* v. *Zoning Board of Appeals*, 154 Conn. 484, 487, 227 A.2d 91 (1967).

Furthermore, our Supreme Court has stated that "[v]*ariances cannot be personal in nature, and may be based only upon property conditions. Garibaldi* v. *Zoning Board of Appeals*, 163 Conn. 235, 239, 303 A.2d 743 (1972); see T. Tondro, Connecticut Land Use Regu-

lation (2d Ed. 1992) p. 124. *Thus, the identity of a particular user of the land is irrelevant to zoning. Dinan* v. *Board of Zoning Appeals,* 220 Conn. 61, 66–67 n.4, 595 A.2d 864 (1991); see T. Tondro, supra, p. 88 (zoning power may only be used to regulate the use, not the user of the land)." (Emphasis added; internal quotation marks omitted.) *Reid* v. *Zoning Board of Appeals,* supra, 235 Conn. 857.

Additionally, we have stated that "[p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance. . . . [*T*]*he basic zoning principle that zoning regulations must directly affect land, not the owners of land;* T. Tondro, supra, p. 137; limits the ability of zoning boards to act for personal rather than principled reasons, particularly in the context of variances." (Citation omitted; emphasis added; internal quotation marks omitted.) *Gangemi* v. *Zoning Board of Appeals,* 54 Conn. App. 559, 564, 736 A.2d 167 (1999), rev'd on other grounds, 255 Conn. 143, 763 A.2d 1011 (2001).

If we were to accept the board's argument that continuous ownership of a preexisting, nonconforming use constituted a legally cognizable hardship, the effect would be to shift the analysis from the property to the owners and users of the property. That would be a result contrary to the holdings of our Supreme Court.

Accordingly, we conclude that the mere fact that the subject property of the variance has been in the same continuous ownership since prior to the enactment of the zoning regulations did not constitute a legally cognizable hardship that would permit the board to grant the variance. The decision to grant the variance on that ground was unreasonable and illegal, and was made without a valid reason and was, thus, improper.

## II

The plaintiffs next argue that the court improperly concluded that there was substantial evidence before the board to grant the variance. Specifically, they argue that there was no evidence that the proposed additions would make the building less nonconforming. We agree.

The board relies on our Supreme Court's decision in *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 535 A.2d 799 (1988), and argues that because the proposed variance would result in a "less offensive" nonconforming use, the trial court's decision should be sustained. In *Adolphson*, the owners of property that had been used as an aluminum casting foundry, a nonconforming use, sought a variance to use the property as a different nonconforming use, an automobile repair shop. Id., 705–706. In that case, there was a specific finding that "the proposed use for the subject property operating under current regulations as to air pollution and the like would be far less offensive to the surrounding residents than a foundry." (Internal quotation marks omitted.) Id., 706. Our Supreme Court held that it was within the board's authority to grant a variance where a property owner sought "to change an established nonconforming use to a less offensive nonconforming use." Id., 712; see also *Stancuna* v. *Zoning Board of Appeals*, 66 Conn. App. 565, 572, 785 A.2d 601 (2001) ("[t]hat a variance will eliminate a nonconforming use constitutes independent grounds for sustaining the granting of a variance").

In *Adolphson*, our Supreme Court specifically noted the importance of the factual finding regarding the lessening of the nonconforming nature of the commercial use that would result from the variance. *"We reiterate the unchallenged finding of the trial court that the proposed use for the subject property . . . would be far less offensive to the surrounding residents . . . ."*

(Emphasis added; internal quotation marks omitted.) *Adolphson* v. *Zoning Board of Appeals*, supra, 205 Conn. 710.

The question before us is whether there was substantial evidence before the board that the result of granting the variance would be a less nonconforming use. "This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration." (Internal quotation marks omitted.) *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission*, 73 Conn. App. 442, 458, 807 A.2d 1089, cert. denied, 262 Conn. 928, 814 A.2d 379 (2002).

Nechamen failed to detail a legally cognizable hardship in his application. He stated that he needed certain equipment in order to modernize and remain competitive in business. In order to obtain the equipment, he needed a significantly larger repair area. He also claimed that the addition of a handicapped accessible waiting room was necessary. He offered three benefits to the town and the surrounding landowners: first, improving the outward appearance of the business; sec-

ond, the elimination of odor from the painting operations; and third, the continued collection of taxes.

At the public hearing before the board, Nechamen stated that the purpose of the variance was to maintain and to modernize the nonconforming commercial use. He also indicated that the variance would permit him to "do things in an environmentally friendly and aesthetically pleasing manner . . . ." On several occasions, he stressed that the variance would not serve to expand the business. He opined, however, that he was unsure as to whether he would do more business. There was no evidence, however, that the nonconforming use *would be reduced* as a result of the variance, nor was there any evidence that the commercial activities presently being conducted on Nechamen's property were offensive to surrounding residents. There was no evidence before the board that surrounding landowners were affected by any paint fumes or odors coming from Nechamen's business.

At the hearing, some residents spoke in favor of the variance and some in opposition. Those residents who spoke in favor of the variance noted that they wanted the business to remain for tax purposes or to improve the appearance of the building. Such reasons, even if beneficial, fail to constitute a cognizable legal hardship that would authorize the board to grant a variance.

Although the variance might allow Nechamen to operate his commercial activities more efficiently, it is well established that financial considerations, unless they greatly decrease or destroy the value of the property, do not constitute a cognizable legal hardship that would warrant a variance. *Norwood* v. *Zoning Board of Appeals*, 62 Conn. App. 528, 534–35, 772 A.2d 624 (2001); see also *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 369, 537 A.2d 1030 (1988). In this case, Nechamen's argument that the variance would allow him to remain

competitive in business was legally insufficient to warrant a variance.

We have thoroughly reviewed the record and have found no evidence that the granting of the variance, which significantly increased the size of the building and added a handicapped accessible office, would result in a less nonconforming use at the subject property. Therefore, the rule set forth in *Adolphson* is inapplicable in the present case. The board's decision to grant the variance on the ground that a less nonconforming use would result was not supported by any evidence, including Nechamen's application, and therefore was improper.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiffs' appeal.

In this opinion the other judges concurred.