ROBERT E. MICHLER ET AL. *v.* PLANNING AND
ZONING BOARD OF APPEALS OF THE TOWN
OF GREENWICH ET AL.
(AC 30925)

Bishop, Harper and West, Js.

Argued February 3—officially released August 10, 2010

*William I. Haslun II,* for the appellant (defendant Van Zandt Williams, executor of the estate of Mary B. Zehnder).

*John K. Wetmore,* for the named defendant (appellant).

*John F. Slane, Jr.,* for the appellees (plaintiffs).

*Opinion*

HARPER, J. The defendant Van Zandt Williams, executor of the estate of Mary B. Zehnder, appeals from the judgment of the trial court sustaining the appeal of the plaintiffs, Robert E. Michler and Sally Sandercock Michler, from the decision of the planning and zoning board of appeals of the town of Greenwich (board) granting the defendant's application for a zoning variance.[1] The defendant claims that the court improperly failed to find that the operation of the zoning regulations for the town of Greenwich created an exceptional difficulty or unusual hardship with regard to the property for which the variance was granted. We disagree. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to the present appeal. On October 16, 2007, the defendant filed an application for a zoning variance with the board.[2] "A variance has been defined as the

---

[1] Although the board is the named defendant, it has chosen to rely on Williams' brief for the purposes of appeal. We therefore refer in this opinion to Williams as the defendant.

[2] The October, 2007 application represented the second attempt by the defendant to obtain a variance for the subject property. The defendant previously applied for a variance on July 3, 2007. That application was denied by the board. Specifically, the board found that "[the defendant] did not provide sufficient information for the [b]oard to determine the potential impact [the] variance would have on the surrounding neighborhood."

In the plaintiffs' brief submitted before this court, they claim that the board's denial of the first application should have operated to prevent the board from considering the second application. The plaintiffs suggest that this could serve as an alternate ground for affirmance. Because we are affirming the judgment of the court that the board improperly granted the variance on its merits, we have no occasion to reach the plaintiffs' alternate

authority granted to [an] owner to use his property in a manner forbidden by the zoning regulations." (Internal quotation marks omitted.) *Curran* v. *Zoning Board of Appeals*, 117 Conn. App. 458, 463, 979 A.2d 599 (2009). The variance that the defendant sought was with regard to certain real property he controls in his capacity as the executor of the estate of his mother. In his application, the defendant claimed that the "[i]rregular shape of [the] lot diminishes [the] lot for zoning purposes from 1.2031 acres to .712 acres under recent changes to regulations not intended to affect old lots of approved subdivisions. Strict application of the regulations deprives [the] owner [of] the right to develop the property in keeping with similar neighborhood development." In his oral presentation to the board, the defendant explained that his mother died in April, 2007. The defendant claimed that, for financial reasons, it was necessary for the estate to sell the subject property. The defendant said that he was concerned that the property would be difficult to market because, under § 6-131 (b) of the Greenwich building zone regulations, any new structure built on the property would actually have to be smaller than the residence that already existed. Section 6-131 (b) (6) of the building zone regulations provides in relevant part that where two rear lots do not "front" on a street, "[t]he area of access way is excluded from lot area calculation for lot size and [floor area ratio]. Lot size is determined to begin at a point where the lot shape requirement of the zone can be demonstrated (either circle or rectangle)." The shape of the defendant's lot brings it under the ambit of § 6-131 (b), and it is from this subsection of the regulations that the defendant sought a variance.

The board granted the defendant's application for a variance. In granting the defendant's application, the

---

ground for affirmance and make no determination as to the validity of their arguments in this regard.

board found that "there is hardship due to a . . . change in the regulations that effectively reduces the lot area . . . and renders the lot non-conforming as to area. The lot was originally created and approved in the same configuration in 1968. Accordingly, the requested variance of lot shape requirement is granted . . . ." The plaintiffs, who own property that abuts the subject property, filed an appeal with the Superior Court from the decision of the board. In their complaint, the plaintiffs claimed that they were aggrieved by the decision of the board because they are "owners of property abutting that of the [defendant] and because they have a specific, personal and legal interest in the decision and their interests are specifically and injuriously affected by the decision." The plaintiffs alleged that, in granting the defendant's request for a variance, the board acted in a "manner that was arbitrary and capricious" and that there was insufficient evidence in the record to support the board's decision.

The court, citing *Hoffer* v. *Zoning Board of Appeals*, 64 Conn. App. 39, 42, 779 A.2d 214 (2001), properly noted that a *unique* hardship, imposed by conditions outside the property owner's control, is a condition precedent to the issuance of a zoning variance. Because the board's decision regarding hardship was based entirely on a finding that the regulation at issue reduced the lot size of the subject property, the court determined that there was no finding of a unique hardship that would justify the issuance of a variance. The court concluded that the board failed to "articulate a sufficient ground for hardship . . . ." This appeal followed.

"Our standard of review when considering an appeal from the judgment of a court regarding the decision of a zoning board to grant or deny a variance is well established. We must determine whether the trial court correctly concluded that the board's act was . . . arbitrary, illegal or an abuse of discretion. . . . Courts are

not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. '. . . We, in turn, review the action of the trial court." (Internal quotation marks omitted.) *Durkin Village Plainville, LLC* v. *Zoning Board of Appeals*, 107 Conn. App. 861, 867, 946 A.2d 916 (2008).

General Statutes § 8-6 (a) provides in relevant part that zoning boards of appeal have the power "to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured . . . ." In light of § 8-6, it has been held that "[p]roof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance. . . . Disappointment in the use of property does not constitute exceptional difficulty or unusual hardship . . . . Additionally . . . [p]ersonal hardships, regardless of how compelling or how far beyond the control of the individual applicant, do not provide sufficient grounds for the granting of a variance. . . . [T]he basic zoning principle that zoning regulations must directly affect land, not the owners of land . . . limits the ability of zoning

boards to act for personal rather than principled reasons, particularly in the context of variances. . . . [T]he hardship must be different in kind from that generally affecting properties in the same zoning district, and must arise from circumstances or conditions beyond the control of the property owner." (Citations omitted; internal quotation marks omitted.) *Durkin Village Plainville, LLC* v. *Zoning Board of Appeals*, supra, 107 Conn. App. 869–70.

As both this court and our Supreme Court have cautioned, "the power to grant variances from the strict application of zoning ordinances should be carefully and sparingly exercised. . . . [U]nless great caution is used and variances are granted only in proper cases, the whole fabric of town- and city-wide zoning will be worn through in spots and raveled at the edges until its purpose in protecting the property values and securing the orderly development of the community is completely thwarted. . . . The power to authorize a variance is only granted for relief in specific and exceptional instances." (Internal quotation marks omitted.) Id., 868–69. It is of particular significance to our analysis that, during the defendant's oral presentation to the board, he cited a *personal hardship*, namely, difficulty in marketing the property for sale, and *disappointment in the use of the subject property*, namely, the inability to build a larger structure, as the main impetuses for seeking a variance. Moreover, the board failed to cite any hardship that differs in kind from the hardship imposed generally on similar properties by the Greenwich zoning regulations, or any condition that is " 'peculiarly oppressive' " to the subject property. *Cymerys* v. *Zoning Board of Appeals*, 151 Conn. 49, 51, 193 A.2d 521 (1963). As the plaintiffs note, the effect of § 6-131 (b) is to reduce the building area for *all* rear lots. There is nothing in the record to indicate that the reduction in the building area available on the subject property is a unique effect of this regulation. Accordingly, on the

basis of the record before us, we conclude that the court properly sustained the plaintiffs' appeal from the board's decision to grant the variance.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] The defendant also claims that the court improperly "overturn[ed] the board's decision granting the variance on the basis that the decision was inarticulate." In this regard, the defendant relies on *Gibbons* v. *Historic District Commission*, 285 Conn. 755, 769–70, 941 A.2d 917 (2008), in which our Supreme Court made the following observation: "[W]e have held that, when a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement . . . [and] attempt to search out and speculate [on] other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision. . . . Notwithstanding the statutory language providing that a zoning commission shall state its reasons for a decision, we also long have held that when a commission gives no reason for its decision, the trial court must search the entire record to find a basis for the commission's decision . . . ." (Citations omitted; internal quotation marks omitted.)

In *Gibbons*, our Supreme Court reaffirmed the traditional rule that, in municipal land use appeals, courts should not search beyond the reason or reasons given by a municipal board or commission for a particular action. Id., 771. Under the traditional rule, "[w]hen [a municipal board] specifically states its reasons, the court should go no further because it could reasonably be inferred that this was the extent of its findings. To go beyond those stated reasons invades the factfinding mission of the [board] by allowing the court to cull out reasons that the [board] may not have found to be credible or proven." (Internal quotation marks removed.) Id. The gist of the defendant's claim is that, in light of *Gibbons*, it was incumbent on the court, having found that the board's decision was allegedly "inarticulate," to "search the record to determine whether there was substantial evidence to support the board's decision . . . ."

The defendant, however, has mischaracterized the decision of the trial court, which this court will interpret by affording the trial court's language its plain meaning. Webster's dictionary defines "inarticulate" as "incapable of giving coherent, clear, or effective expression to one's ideas or feelings." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003). In its decision, however, the court did not once use the word "inarticulate" to describe the decision of the board, nor did the court imply that the board's expression of its reasons for granting the variance was incoherent, unclear, or ineffective. Instead, the court wrote: "As the board's decision fails to articulate *a sufficient ground for hardship*, the court sustains the plaintiffs' appeal." (Emphasis added.)

A careful reading of *Gibbons* reveals that a trial court considering a zoning appeal is required to search the entire record to find a legal basis for a zoning board's decision only when *no reason* has been given for granting a variance or special exception. See *Gibbons* v. *Historic District Commission*, supra, 285 Conn. 770. When a board has provided intelligible and cogent reasons supporting a decision to grant a variance, as is the case in the appeal before us, the trial court's province is limited to a review of the legal sufficiency of those reasons. Accordingly, by reviewing the decision of the board to determine whether a reduction in lot size was a legally sufficient reason for granting a variance, the court exercised the proper scope of review.